# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| THE ESTATE OF | ) | |
| JOSE BAUDILIO LEMUS RODRIGUEZ, | ) | |
| by and through its Personal Representative, | ) | |
| JAIME PALMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:08-CV-0267 |
| | ) | |
| CITY OF FORT WAYNE, INDIANA, | ) | |
| and OFFICER JAMES ARNOLD, in his | ) | |
| individual and official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

## I.  INTRODUCTION

On December 23, 2007, the Plaintiff's decedent, Jose Baudilio Lemus Rodriguez

("Rodriguez") was shot and killed by Fort Wayne Police Officer James Arnold ("Arnold")

following a car chase.  The actual shooting was captured on three police in-car cameras and the

videos (generally with audio) clearly show the event, albeit from different vantage points and

varying distances.  On November 7, 2008, the Plaintiff commenced this excessive force action

under 42 U.S.C. § 1983 against both the City of Fort Wayne and Arnold.

This Opinion and Order, however, does not involve the merits of the action, but rather

deals with a threshold discovery dispute, the Defendants' Motion for a Protective Order.

(Docket # 12.)  In short, the Defendants maintain that they are willing to turn the three videos

over to counsel for the Plaintiff, but only if a protective order is entered prohibiting their

disclosure during the pretrial process to third persons, the public, or the media.

The Defendants argue that the protective order is necessary because it will: (1) protect their right to a fair trial as the videos will inevitably be cropped by the media to show only the shooting, not the preceding events, and this would prejudice potential jurors; (2) help insure the personal safety of Arnold and the other officers shown in the video; and (3) prevent a pretrial disclosure that may have a chilling effect upon the police department's internal use of such record making.

The Plaintiff filed a response on January 26, 2009 (Docket # 15), and the Defendants submitted a reply on February 9, 2009. (Docket # 16.) On February 11, 2009, the Court ordered the videos filed under seal for an *in camera* inspection, which has now been completed.

In short, the Plaintiff argues that the Defendants have not shown good cause for the entry of a protective order. As the Plaintiff sees it, the videos are eventually going to be made a part of the record anyway and thus available for anyone to see, and that while the event and the existence of the videos received some public attention, that was primarily because the Defendants chose to conduct a press conference about the incident. Finally, the Plaintiff argues that the Defendants offer only conclusory and insufficient statements in support of their motion.

Having considered these arguments, and for the reasons provided, the Motion for a Protective Order will be DENIED.[1]

---

[1] The Defendants argue for the first time in their reply brief that since their motion only seeks to limit the persons to whom the Plaintiff can show the videos, the Plaintiff is really advancing the position of the public at large, and has no standing to do so. (*See* Reply Br. 1 (citing *Rahman v. Chertoff*, No. 05 C 3761, 2007 WL 2892972, at *2 (N.D. Ill. Sept. 28, 2007) (citing *Ernst v. Child Youth Servs.*, 108 F.3d 486, 499-500 (3rd Cir. 1997))).) The *Rahman* case, however, is inapposite because there the Plaintiffs were perceived as challenging the sealing of filed documents in accordance with a protective order and on behalf of the public. This case, where no protective order has been entered, involves a more fundamental question: have the Defendants shown, in the first instance, good cause for the entry of such an order? Moreover, since the motion seeks to place restraints on the way in which information provided to the Plaintiff by way of a court order might be used, the Plaintiff has standing to assert its opposition. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984).

## II. STANDARD FOR THE ENTRY OF A PROTECTIVE ORDER

The Seventh Circuit Court of Appeals has stated that "[d]istrict courts have broad discretion in matters relating to discovery." *Directory Concepts v. Fox,* No. 1:08-CV-225, 2008 WL 5263386, at *2 (N.D. Ind. Dec. 16, 2008) (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)). For example, under Federal Rule of Civil Procedure 26(c)(1)(E), a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . designating the persons who may be present while discovery is conducted . . . ."

Thus, upon a showing of good cause, a district court may enter a protective order prohibiting the public dissemination of information obtained pursuant to the rules governing discovery in a civil proceeding. *Seattle Times Co.*, 467 U.S. at 37. But the entry of such an order is the exception rather than the rule. *United States v. Menominee Tribal Enters.*, No. 07-C-316, 2008 WL 2273285, at *6 (E.D. Wis. June 2, 2008). And "[a]bsent a protective order, parties to a lawsuit may disseminate materials obtained during discovery as they see fit." *Id.* (quoting *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994)); *see, e.g.*, *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) ("[T]he public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding . . . . Most cases endorse a presumption of public access to discovery materials . . . ."); *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 417 (S.D. Ind. 2001) (citing *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994)) (explaining that court files and documents should be "open to the public unless the court finds that its records are being used for improper purposes").

This is not to say, however, that all discovery is subject to public disclosure, but certainly "those documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Menominee Tribal Enters.*, 2008 WL 2273285, at *6 (quoting *Baxter Int'l v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)).

"The movant bears the burden of showing good cause, and such burden must be satisfied with 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause.'" *Directory Concepts*, 2008 WL 5263386, at *2 (quoting *Patt v. Family Health Sys., Inc.*, 189 F.R.D. 518, 522 (E.D. Wis. 1999) (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2035 (2nd ed. 1994))); *see also Ezell v. Potter*, No. 2:01 CV 637, 2006 WL 1094558, at *1 (N.D. Ind. Mar. 16, 2006). Good cause, in the context of prohibiting the disclosure of discovery material that has not yet entered the judicial record, requires a showing "that disclosure will cause a clearly defined and serious injury." *Menominee Tribal Enters.*, 2008 WL 2273285, at *7 (quoting *Felling v. Knight*, No. IP 01-0571-C-T/K, 2001 WL 1782360, at *2 (S.D. Ind. Dec. 21, 2001)).

Overall, however, the analysis requires some balancing of the public's interest in open proceedings against an individual's private interest in avoiding "annoyance, embarrassment, oppression, or undue burden or expense . . . ." *Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) (citing *Flaherty v. Seroussi*, 209 F.R.D. 295, 297 (N.D.N.Y. 2001) (quoting Fed. R. Civ. P. 26(c))).

### III. DISCUSSION

At the outset, the Defendants argue that any release of the video could result in a denial of a fair trial, or a tainted jury pool, particularly if the media repeatedly presents a truncated version of the shooting of Rodriguez.  As the Defendants see it, the Plaintiff has offered no reason at all why the video should be presented to the media, and thus its interest cannot outweigh the interests of the Defendants.

The Plaintiff argues that the events captured on the videos occurred in a public setting, and that the tapes do not display or reveal any identities or confidential material.  Finally, the Plaintiff notes that while there has been some public disclosure about the content of the videos, it has all been done by the Defendants, and with an emphasis on their supposed exculpatory nature.

The Defendants' concerns have been addressed before in the context of video depositions.  *See, e.g.*, *Felling*, 2001 WL 1782360, at *2 ("[Nonparty deposition] [v]ideotapes are subject to a higher degree of potential abuse than transcripts.  They can be cut and spliced and used as 'sound-bites' on the evening news . . . ."); *Hobley v. Chicago Police Commander Burge*, 225 F.R.D. 221, 225 (N.D. Ill. 2004) (concerning the possible dissemination of police officer deposition videos where they repeatedly assert their Fifth Amendment rights and where the dissemination of the videos was to essentially create an inference of guilt); *Stern v. Cosby*, 529 F. Supp. 2d 417 (S.D.N.Y. 2007) (issuing protective order prohibiting the distribution of a video where its release would add to media frenzy over case, interfere with administration of justice, and subject the television journalist deponent to annoyance, embarrassment, oppression, or undue expense or burden).  The parties' research, as well as the Court's, has not located a case where these over-arching principles have been applied to a police video.

In *Menominee Tribal Enterprises*, 2008 WL 2273285, at *7, however, the district court

was faced with a situation where the defendants posted on a website all the discovery received

from the government in a case involving the False Claims Act, 31 U.S.C. §§ 3729-33, and breach

of contract.  The government moved for an order requiring that the posted discovery be removed

from the website with no further discovery to be posted there.  The argument offered in support

of the motion was that the posting of this information may taint the jury pool and that potential

witnesses, those who had their video depositions posted, would be subject to harassment and

intimidation.  *Id*.

In denying the motion, the Court observed that the government there (like the Defendants

here) offered only non-specific, conclusory assertions in support of their position.  *Id*. at *8.

And, as the Court noted, whether any potential juror actually perused the website was something

that could be explored in voir dire.  *Id.*

In this case, only one of the dashboard video recordings shows the actual pursuit of

Rodriguez's vehicle.[2]  To the extent the videos even show the shooting, they are brief and

unlikely to cause prejudice or taint the jury pool.  Moreover, as in *Menominee Tribal*

*Enterprises*, the question of any prejudice can be fully explored on voir dire; and unlike

depositions of potential witnesses (which may never be seen at trial), the jury here will certainly

see the videos during the course of the trial, *Scott v. Harris*, 127 S. Ct. 1769 (2007), and under

such admonishments and cautionary instructions as the Court deems appropriate.  Consequently,

the prospect of any prejudice, or the inability to cure it, is minimal.

Moreover, the Defendants give no specifics concerning how any of the police officers

---

[2] Two of the police videos simply show those respective cars responding to the scene, and nothing of the pursuit.  Both videos also have audio, but only one seems to be listening to the broadcast of the pursuing police car.

involved would be subject to harm if the video were to be released, and it is unclear how

disclosing the video would have any affect at all on police record keeping. Certainly no

affidavits or other evidence have been submitted to support any of these contentions, and it is

hard to believe that revealing these videos will stop police from using dashboard cameras.

Furthermore, the Defendants' reliance on *Paine v. City of Chicago*, No. 06 C 3171, 2006

WL 3065515 (N.D. Ill. Oct. 26, 2006), which involved a stipulated protective order in a Section

1983 case against City of Chicago police officers, is misplaced. In *Paine*, the District Court

entered the agreed protective order preventing the disclosure of "confidential matter" to third

parties and the press, including "files generated by the investigations of complaints of

misconduct by Chicago police officers[.]" *Id*. at *1. Following the protective order's entry, the

Plaintiff filed a petition challenging that provision, and the Chicago Tribune also intervened,

arguing that the internal affairs documents were improperly deemed "confidential" and that the

protective order was overly broad.

The *Paine* Court found that although the public and the press have some right of access

to court proceedings and documents, "the general public and the press lack both a common-law

and First Amendment right of access to files generated by the Chicago Police Department during

its investigation of allegations of police misconduct, including Complaint Register files." *Id*. at

*5. The *Paine* Court reasoned,

> Pretrial discovery of police records must be conducted in a manner which will not
> threaten police operations: The members of a police department must be able to
> rely upon their confidential records and notations being preserved for their
> internal use in all cases, for if it were otherwise, the knowledge that some of the
> confidential information recorded might be later exposed to outside parties would
> have a certain and chilling effect upon the internal use of such record making.

*Id*. (citation omitted).

Furthermore, in discussing the good cause to enter the protective order, the *Paine* Court

noted that the Defendant City of Chicago "has asserted privacy interests in the personal

identifiers of officers, disciplinary histories, reports, and statements of civilian parties and

witnesses that is of a sensitive or non-public nature related to discipline[,]" and that

dissemination of potentially inadmissible information contained in the pretrial discovery could

unfairly influence the jury pool. *Id*. at *7. The Court therefore concluded that "given the

implications to a fair trial, privacy interests, and to the protection of police officers and non-party

witnesses, sufficient reasons exist to shield this information during pretrial discovery until the

trial court deems otherwise[,]" *id*. at *8, and consequently upheld the parties' agreed-upon

protective order.

In this case, however, the Court is not interpreting the terms of an agreed-upon and

enforceable protective order, as in *Paine*. Rather, the Court must view the issue through a

different lens, visiting the propriety of the protective order in the first instance, prior to its

issuance.

Most significantly, the documents in *Paine* clearly contained confidential information

generated during an internal investigation, including "personal identifiers of the officers,

disciplinary histories, reports, and statements of civilian parties and witnesses that is of a

sensitive or non-public nature related to discipline." *Id*. at *7. In contrast, the dashboard video

recordings in this case simply record an event that occurred on a public street, involving an

incident that will also be described by eye-witnesses. Overall, this is a far cry from the type of

investigation in *Paine* that occurred behind closed doors and involved people offering

confidential information. Moreover, as far as can be determined, the videos do not record the

identity of any of the police officers shown on camera.  In short, the concerns present in *Paine*, involving the possible dissemination of confidential or sensitive information, simply do not exist here.

Accordingly, the Defendants have failed to offer "any particular and specific demonstration of fact," *Directory Concepts,* 2008 WL 5263386, at *2, for the relief they seek, and only conclusory, unsupported statements describing some ill-defined injury.  *Menominee Tribal Enters.*, 2008 WL 2273285, at *7.  Consequently, because there has been no showing of "annoyance, embarrassment, oppression, or undue burden or expense[,]" *Felling*, 211 F.R.D. at 554, the Motion for Protective Order must be denied.

## IV.  CONCLUSION

For the reasons provided, the Defendant's Motion for Protective Order (Docket # 12) is hereby DENIED.

SO ORDERED.

Enter for February 18, 2009.

 S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge